IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD M. KASER,

    Plaintiff

v.

PROTECTIVE LIFE INSURANCE
COMPANY, *et al.*

    Defendants

Civil Action No.

01CV2601 WDQ

**REPLY TO OPPOSITION TO MOTION TO DISMISS**

Financial Protection Marketing, Inc. ("FPM") and Protective Life Insurance Company ("PLIC") submit this memorandum in reply to Kaser's opposition to their motion to dismiss.[1]

**1.**

**Claim for Tortious Interference with
Economic Relations Against PLIC**

Kaser argues that even if (as the Court of Appeals has now ruled) he does not have a claim against FPM for tortious interference with economic relations, he has such a

---

[1] The Court certified the tortious interference claim to the Court of Appeals and entered the stay of the breach of contract claim pending resolution of the certification proceeding before the time for FPM's and PLIC's reply had run. Contemporaneously with this Reply, FPM and PLIC are filing a motion to lift the stay and for a ruling on their motion to dismiss.

claim against FPM's parent corporation, PLIC. He contends that PLIC was not a party to the economic relationship with Chevy Chase Bank, and that he has pled facts which, if true, would destroy the "privilege" on the part of PLIC to interfere with its affiliate's economic relationships.

This Court has already ruled in this case that PLIC cannot, as a matter of law, tortiously interfere with FPM's contracts *or* its economic relationships. The original Complaint contained claims against both FPM and PLIC for tortious interference with contract and tortious interference with economic relations. The Court dismissed the claims for tortious interference with contract with prejudice as to both FPM and PLIC, relying on the settled rule that a person cannot tortiously interfere with a contract to which the person is a party. The Court then went on to address Kaser's claim for tortious interference with economic relations against PLIC and explained (January 3, 2002 Memorandum Opinion and Order, at 20, emphasis supplied):

> ...Mr. Kaser has alleged that FPM was a wholly-owned subsidiary of PLIC. *In Cooperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771-72 (1984) the Supreme Court held that a parent corporation was legally incapable of conspiring with its wholly owned subsidiary for purposes of the antitrust laws. This decision rested on the recognition that corporations that have a complete unity of interest, despite separate incorporation, are essentially the same entity and thus incapable of conspiring. *Id*. The same unit of interest test may be used to determine whether closely related companies are capable of interfering with each other's contracts. See *F.C. Cycles Int'l, Inc. v. Fila Sport, S.P.A.*, 184 F.R.D. 64, 80 (D. Md. 1988). Mr. Kaser has not suggested that PLIC's interests in any way diverged from

>those of its wholly owned subsidiary, FPM. Indeed, all his claims against PLIC are premised on the essential identity of the two corporations. <u>Therefore, PLIC cannot be considered an outsider to the economic relations between FPM and Mr. Kaser so as to have tortiously interfered with them.</u>

As to FPM, the Court then ruled that Kaser had not alleged with the required degree of specificity the misrepresentation by Hughes that Kaser had relied on for the tortious conduct giving rise to his claim for tortious interference with economic relations. Accordingly, the Court allowed Kaser 30 days to file an amended complaint for this count.

Even if Kaser was permitted to attempt to resurrect a claim against PLIC in the Amended Complaint after the Court's ruling quoted above, the Amended Complaint contains no new or different allegations about PLIC. The only changes to the Amended Complaint are (1) to add an allegation that Hughes misrepresented facts to Chevy Chase Bank before he left the employ of FPM, and (2) to add breach of contract claims against FPM and PLIC. Accordingly, Kaser's claim for tortious interference with economic relations against PLIC must also be dismissed.

### 2.

### Breach of Contract

Kaser argues that he has stated a claim for breach of contract against FPM and PLIC by (1) failing to pay him continued service fees on the Chevy Chase Bank policy after termination of the agreement, (2) Hughes' alleged solicitation of the agent of record

status on the Chevy Chase Bank account, and (3) failing to give him 30 days advance notice of termination.

There is no provision in the agreement for continued service fees after termination of the agreement. It is settled that "an insurance agent has no vested right to compensation under an agency contract after termination; an agent's right to commissions, or salary of other compensation upon termination is governed by the terms of the agency contract. Holmes' Appleman on Insurance 2d §97.9, S 453(2). Accord, Rosenberg v. Lipman, 143 Md. 512, ("a contract providing for the payment of commissions to the agent on renewal policies confer on him no right to collect and retain such commissions after the termination of the agency ...."). See also Anderson v. Farm Bureau, 732 P.2d 699, 707("it is well settled that an insurance agent has no vested right to compensation under an agency contract after termination ... an agent's right to commission, salary or other compensation upon termination is governed by the terms of the agency contract").

Here, the agreement between FPM and Kaser did not provide for continued commissions after termination of the agreement. This Court has already ruled that the agreement "made no provision for any continued payment of service fees to Mr. Kaser after termination." January 3, 2002 Memorandum Opinion and Order, at 3. Contrary to Kaser's contention, the fact that paragraph 5 of the agreement expressly requires Kaser to perform certain limited services after the termination of this agreement does not support

the argument that Kaser is entitled to continued commissions after termination. Rather, it shows that the parties understood how to expressly make an obligation survive termination. The fact that they did not do so with respect to service fees indicates that such an obligation was not intended.

Likewise, there is no basis in the agreement for Kaser's contention that Hughes' alleged solicitation of agent of record status for Chevy Chase Bank away from Kaser violated the agreement. In apparent recognition of this, Kaser contends that it was a breach of the implied duty of good faith and fair dealing under Maryland law. Kaser is incorrect. It is settled that the implied duty of good faith and fair dealing in a contract only prohibits one party to a contract from acting in a manner so as to prevent the other party from performing his obligations under the contract. <u>Edell & Associates, P.C. v. Law Offices of Peter G. Angelos</u>, 264 F.3d 424 (4th Cir. 2001) ("the covenant is limited to prohibiting one party from acting in such a manner as to prevent the other party from performing his obligations under the contract"). Kaser has not suggested any way in which the alleged solicitation of the Chevy Chase agent of record status impaired or prevented him from performing any of his *obligations* under the agreement.[2] Kaser alleges only that it impaired his right to be paid service fees under the agreement. Moreover, it is settled that an implied duty of good faith and fair dealing "cannot act as a

---

[2] The agreement did not obligate Kaser to refer clients to FPM at all, let alone require him to maintain a minimum premium volume.

substitute for express contractual terms and cannot change the terms of the contract." Id. Here, as set forth above, the agreement contains an express provision governing the payment of service fees which does not (unlike paragraph 5 of the agreement) provide for an obligation beyond termination of the agreement. The implied duty of good faith and fair dealing cannot be used to vary this express term of the contract.

Kaser also argues that he has stated a breach of contract claim against FPM because he has alleged that FPM's December 15, 2000 letter giving notice of termination of the agreement thirty days later was not actually mailed to him until early January, 2001. As set forth in FPM's motion to dismiss, an essential element to a breach of contract claim is damage resulting from the breach. Kaser has not alleged any damage resulting from the claim that he was given only two weeks notice rather than 30 days notice.

Finally, Kaser argues that §27-503(b)(2) of the Insurance Article of the Maryland Annotated Code required FPM to give him 90 days notice before termination of the agreement. This alleged statutory violation would not support Kaser's claim for breach of contract against FPM and PLIC. Moreover, Kaser is incorrect in his interpretation of this section. By its express terms, this section applies only if "an *insurer* intends to

cancel a written agreement with an insurance producer...."[3] (emphasis supplied). FPM is an insurance producer, not an insurer. See Insurance Article, §§1-101(u) (definition of insurance producer) and 1-101(v) (definition of insurer).

Kaser suggests that the section applies to FPM because FPM is an agent acting on behalf of insurers. His circular interpretation of this section is unreasonable, unsupported and contrary to the language of the statute. Section 27-503(b)(2) is clear and unambiguous. Maryland follows the objective rule of statutory construction under which the plain, unambiguous language of a statute must be given effect. Hall v. U.S. I.N.S., 167 F.3d 852 (4th Cir. 1999); U.S. ex rel. Josling v. Community Home Health of Maryland, 984 F. Supp. 374 (D. Md. 1997). As §27-503 itself illustrates, the General Assembly knows how to distinguish between insurers and insurance producers when it wants to do so. Under Kaser's theory, every obligation of insurers under the Insurance Article would also be an obligation of insurance producers who, by definition, act as agents for insurers. This absurd result is unreasonable, and obliterates the distinction carefully drawn by the General Assembly between the terms "insurer" and "insurance producer."

---

[3] In 2001, the General Assembly substituted the term "insurance producer" to encompass the former statutory terms "agent" and "broker" throughout the Code. Ch. 731, 2001 Acts of Md.

## CONCLUSION

WHEREFORE, for the reasons stated, FPM and PLIC respectfully request the Court to dismiss the Amended Complaint with prejudice.

Respectfully submitted,

_____/s/_____
Robert J. Mathias (Bar No. 00253)
Marta D. Harting (Bar No. 10126)

PIPER MARBURY RUDNICK & WOLFE LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September, 2003, a copy of the foregoing Reply to Opposition to Motion to Dismiss was delivered by electronic filing to:

Roderick R. Barnes, Esquire
Ferguson, Schetelich & Heffernan
100 South Charles Street
Suite 1401
Baltimore, Maryland 21201-2703

Attorney for Richard M. Kaser

_____/s/_____
Marta D. Harting