GUARANTEED RESIDUAL INVESTMENT PROTECTION
GENERAL AGENT AGREEMENT

THIS AGREEMENT is made this 13th of December, 1999, by and between Richard M. Kaser of Phoenix, Arizona (hereinafter designated as "General Agent"), and Financial Protection Marketing, Inc., an Indiana Corporation (hereinafter designated as "Special Marketing Agent" or "SMA").

IT IS HEREBY AGREED, among the parties hereto as follows:

1. SMA hereby appoints General Agent as its General Agent for its insurance carrier listed in the attached Schedule A to solicit the sale of Guaranteed Residual Investment Protection ("GRIP") Master Policies or Policies to lenders in the states listed in Schedule A which is attached hereto and made a part hereof and to assist in the completion of a Lender's Agreement between the Lender and SMA.

2. So long as General Agent fully and faithfully complies with all of the terms and conditions of this Agreement, SMA shall pay to General Agent an administrative service fee in the following manner:

SMA shall pay to General Agent (directly) a service fee equal to the percentage indicated in Item # 3 below of the net written premiums arising out of Guaranteed Residual Investment Protection Certificates or enrollments under said Master Policies or Policies which are subjects of this agreement and accepted by SMA.

3. The General Agent's service fee shall be equal to seven and one-half percent (7.5%) of the net written premiums less any amount of commission paid to other agents who would be agents of the Policyholder.

4. General Agent agrees to perform faithfully in every way the duties as General Agent in compliance with instructions, rules and regulations supplied by SMA, to keep true and complete records and accounts of all transactions with Lenders and SMA. The service fee will be paid to General Agent as described in Item #2 above no later than 30 days after the close of each month's business.

5. General Agent agrees, upon termination of this agreement, to render the normal and usual General Agent's services for SMA and the said insurance carrier during the remaining unexpired term of all Certificates issued under Master Policies and obligations under said Policies. Upon notice of termination, General Agent further agrees to return to SMA, all property of the insurance carrier and SMA.

6. General Agent shall not cause cancellation of Policies or Certificates placed with the insurance carrier, nor cancel and replace Policies or Certificates of the insurance carrier with those of another company or companies without agreement and written instruction by SMA to do so.

7. In case of a misunderstanding as to the interpretation or application of any provision of this Agreement, the parties hereto agree to submit such differences to two arbitrators, one to be appointed by the General Agent and one to be appointed by the SMA, and such arbitrators so appointed shall select an umpire who is disinterested and who is experienced in those classes of insurance to which this Agreement applies. A decision rendered in writing signed by any two of the persons appointed and acting hereunder, shall be final and binding upon all parties signing this Agreement, and judgement may be entered thereon. The costs of such arbitration shall be borne equally by the SMA and the General Agent.

8. SMA shall not be responsible for any agency expenses whatsoever nor any license fees, municipal, county or occupational taxes of any kind, nature or description.

9. This Agreement may be terminated by mutual consent, or by either party at any time upon written notice to the other by telegraph notice or written notice by registered or certified mail at its, their or his usual place of business, stating when termination shall be effective, which shall not be less than 30 (thirty) days from the date of such notice, unless such cancellation is due to violation of the terms of this Agreement, fraud or misrepresentation or is mandated by State or Federal regulation in which case cancellation will be effective immediately upon receipt of notice.

10. Any terms or conditions of this General Agent Agreement which are in conflict with the statutes or lawful regulations of the state wherein business is written are hereby amended without notice to comply with such statutes and regulations as may be from time to time governing.

11. The General Agent Agreement may be amended, supplemented, or changed at any time and from time to time only by an agreement in writing which makes specific reference to this General Agent Agreement and which is signed by the party against whom enforcement of any such amendment, supplement, or modification is sought.

12. Neither party may assign this Agreement or any interest herein or any benefit hereunder without the written consent of the other. Notwithstanding, this Agreement shall be binding upon the parties' successors, legal representatives and assigns.

GRIP-GA Rev 6/97

IN WITNESS WHEREOF, the parties hereto have set their signatures to be effective as of the date set forth above.

                FINANCIAL PROTECTION MARKETING, INC.

By: _____
Title:   President
Date:   1-7-00

WITNESS

*Lisa K Hastings*

                RICHARD M. KASER

By: _____
Date:   1/6/00

WITNESS

*Dena L. Kaser*

GRIP-GA Rev 6/97

**Apx.3**

GUARANTEED RESIDUAL INVESTMENT PROTECTION
SCHEDULE "A"

Insurance Carrier:

    Vesta Fire Insurance Corporation, Birmingham, Alabama and/or
    Sheffield Insurance Corporation, Birmingham, Alabama and/or
    Western Diversified Casualty Insurance Company, Chicago, Illinois

States in which General Agent is authorized to sell Insurance Carrier's Guaranteed Residual Investment Protection:

    Maryland

GRIP-GA Rev 6/97