IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD M. KASER,

          Plaintiff

    v.

PROTECTIVE LIFE INSURANCE
   COMPANY, *et al.*

          Defendants

Civil Action No.

01CV2601 WDQ

## OPPOSITION TO MOTION FOR RECONSIDERATION

Defendants, Financial Protection Marketing, Inc. ("FPM") and Protective Life Insurance Company ("PLIC"), oppose the Motion for Reconsideration filed by Plaintiff, Richard M Kaser ("Kaser").

## PROCEDURAL BACKGROUND

Kaser's initial Complaint in this case was filed in August, 2001 against FPM, PLIC (FPM's parent corporation), and James Hughes (FPM's former President) asserting various tort counts arising out of alleged conduct by Hughes and FPM under an insurance agency agreement between FPM and Kaser (the "Agreement"). Under the Agreement, FPM (an insurance agency) agreed to pay Kaser (also an insurance agent) an administrative service fee equal to a percentage of the net written premiums from residual

value insurance policies that he originated (those that he referred to and were accepted by FPM and placed by FPM with an insurer). The Complaint and Amended Complaint arise out of Kaser's contention that FPM wrongfully terminated the Agreement and that, while the Agreement was in force, Hughes wrongfully solicited Kaser's agent of record status on the residual value insurance policy issued to Chevy Chase Bank, the only account that Kaser referred to FPM under the Agreement.

On January 3, 2002, the Court dismissed all counts against FPM and PLIC with prejudice, except for Kaser's claim that FPM tortiously interfered with his economic relationship with Chevy Chase Bank, which the Court dismissed without prejudice allowing Kaiser thirty days to amend to plead such claim with specificity as to when the alleged tortious conduct on which the claim was founded occurred.

On February 1, 2002, Kaser filed the Amended Complaint in which (in addition to reasserting his claim for tortious interference with economic relations) he added a new claim couched as breach of contract against FPM and PLIC which alleged that the Agreement was terminated with insufficient advance notice to him under § 27-503(b)(2) of the Insurance Article and the Agreement itself.

On February 19, 2002, FPM and PLIC moved to dismiss the Amended Complaint on grounds that (1) the breach of contract claim fails as a matter of law because the Agreement was terminable at will and contained no provision for continuing service fees

~BALT1:4086575.v1 |10/14/03
304948-1

after termination, and § 27-503(b)(2) does not apply to the Agreement between Kaser and FPM, and (2) the claim for tortious interference with economic relations was still not pled with the required specificity and, in any event, fails to state a claim because FPM was a party to the economic relationship with which it was alleged to have interfered.

On March 14, 2002, the Court issued an order finding that it is appropriate to certify to the Court of Appeals the question whether Kaser, an insurance subagent, has an economic relationship with the insured separate from the insurance policy issued to the insured with which the insurer or its agent can interfere. The Court also issued a stay of such claims pending resolution of the certification proceedings.

On April 5, 2002, the Court issued the Memorandum and Certification Order to the Court of Appeals. On August 28, 2003, the Court of Appeals answered the certified question in the negative, and ruled that Kaser did not have a claim for tortious interference with economic relations because FPM was a party to the economic relationship with which it is alleged to have interfered.

On September 10, 2003, FPM and PLIC moved to lift the stay and for a ruling on their Motion to Dismiss the Amended Complaint, which the Court had not ruled on when it certified the issue in connection with the tortious interference claim to the Court of Appeals and issued the stay.

On September 17, 2003, the Court issued its Memorandum Opinion granting the Motion to Dismiss. As to the claim that the Agreement was terminated with insufficient advance notice to Kaser in violation of § 27-503(b)(2) and the Agreement, the Court held that Kaser had failed to exhaust his exclusive administrative remedy before the Maryland Insurance Administration ("MIA"). As to the tortious interference claim against PLIC, the Court held that (like FPM), PLIC was a party to the economic relationship with which it is alleged to have interfered such that the claim fails as a matter of law.

## ARGUMENT

### 1.

### <u>Breach of Contract</u>

In its Memorandum Opinion, the Court held that Kaser is required to exhaust administrative remedies before the MIA for his claim that the Agreement was terminated with insufficient advance notice to him in violation of § 27-503(b)(2) and the Agreement itself. In his Motion for Reconsideration, Kaser suggests that the Court made a mistake of law in holding that he is required to exhaust administrative remedies because his breach of contract claim is not based on a violation of § 27-503(b)(2). He does *not* argue that the doctrine of exhaustion of administrative remedies does not apply to a claim that § 27-503 has been violated; he only argues that he makes no such claim here.

~BALT1:4086575.v1  |10/14/03
304948-1

Kaser's position is remarkable because Kaser has steadfastly argued that § 27-503(b)(2) applies to, and was violated by, the termination of the Agreement between him and FPM.    In Kaser's opposition to the motion upon which the Court ruled in the September 17, 2003 Memorandum Opinion (the subject of Kaser's Motion for Reconsideration), Kaser argued (footnote omitted):

> Further, Md. Insurance Code Ann. § 27-503 requires that ninety (90) days prior notice be given by an insurer before terminating an agency agreement. This was not done.

*See Plaintiff's Opposition to Defendants Financial Protection Marketing Inc.'s and Protective Life Insurance Company's Motion to Dismiss or, In the Alternative, for Summary Judgment*, at 10.

In an about-face, Kaser now takes the position that § 27-503 has no application here, and that the Court made a mistake of law in requiring him to exhaust remedies thereunder. Although FPM and PLIC have consistently argued that § 27-503(a) does *not* apply here, Kaser had steadfastly maintained that it *does*. Now, Kaser challenges the Court's ruling that, since his claim is based on § 27-503(a), he must exhaust administrative remedies for that claim.

Even if exhaustion of administrative remedies does not bar his breach of contract claim, the claim fails as a matter of law. There is no provision in the Agreement for continued service fees after termination of the Agreement. It is settled that "an insurance

5

agent has no vested right to compensation under an agency contract after termination; an agent's right to commissions, or salary of other compensation upon termination is governed by the terms of the agency contract." Holmes' *Appleman on Insurance 2d* § 97.9, S 453(2). *Accord, Rosenberg v. Lipman*, 143 Md. 512 (1923) ("a contract providing for the payment of commissions to the agent on renewal policies confer on him no right to collect and retain such commissions after the termination of the agency....") *See also, Anderson v. Farm Bureau*, 732 P.2d 699, 707 (Idaho App. 1987) (citations omitted) ("it is well settled that an insurance agent has no vested right to compensation under an agency contract after termination ... an agent's right to commission, salary or other compensation upon termination is governed by the terms of the agency contract.").

Here, the Agreement between FPM and Kaser did not provide for continued commissions after termination of the agreement. This Court has already ruled that the Agreement "made no provision for any continued payment of service fees to Mr. Kaser after termination." January 3, 2002 Memorandum Opinion and Order, at 3. Contrary to Kaser's contention, the fact that paragraph 5 of the Agreement expressly requires Kaser to perform certain limited services after the termination of this Agreement does not support the argument that Kaser is entitled to continued commissions after termination. Rather, it shows that the parties understood how to expressly make an obligation survive

termination.  The fact that they did not do so with respect to service fees indicates that such an obligation was not intended.

Likewise, there is no basis in the Agreement for Kaser's contention that Hughes' alleged solicitation of agent of record status for Chevy Chase Bank away from Kaser violated the agreement or any implied duty of good faith and fair dealing under Maryland law.  It is settled that the implied duty of good faith and fair dealing in a contract only prohibits one party to a contract from acting in a manner so as to prevent the other party from performing his obligations under the contract.  *Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 444 (4th Cir. 2001) ("the covenant *is limited* to prohibiting one party from acting in such a manner as to prevent the other party from performing his obligations under the contract").  Kaser has not suggested any way in which the alleged solicitation of the Chevy Chase agent of record status impaired or prevented him from performing any of his *obligations* under the Agreement.[1]  Kaser alleges only that it impaired his right to be paid service fees under the Agreement.  Moreover, it is settled that an implied duty of good faith and fair dealing "cannot act as a substitute for express contractual terms and cannot change the terms of the contract." *Id.* Here, as set forth above, the Agreement contains an express provision governing the

---

[1]  The agreement did not obligate Kaser to refer clients to FPM at all, let alone require him to maintain a minimum premium volume.

payment of service fees which does not (unlike paragraph 5 of the agreement) provide for an obligation beyond termination of the agreement. The implied duty of good faith and fair dealing cannot be used to vary this express term of the contract.

Nor has Kaser stated a breach of contract claim against FPM by alleging that FPM's December 15, 2000 letter giving notice of termination of the Agreement thirty days later was not actually mailed to him until early January, 2001. As set forth in FPM's motion to dismiss, an essential element to a breach of contract claim is damage resulting from the breach. Kaser has not alleged any damage resulting from the claim that he was given only two weeks notice rather than 30 days notice.

**2.**

**Claim for Tortious Interference with**
**<u>Economic Relations Against PLIC</u>**

In its Memorandum Opinion, the Court dismissed the tortious interference count against PLIC because, like FPM, PLIC was a party to the economic relationship with which it is alleged to have interfered. Kaser argues that the Court erred in this ruling because PLIC did not issue the insurance policy, and thus it was not a party to the relationship.

~BALT1:4086575.v1 |10/14/03
304948-1

Kaser's argument misses the mark. The fact that PLIC did not issue the insurance policy does not change the result. PLIC's alleged liability in this case is based solely on Kaser's allegations that (1) PLIC was FPM's parent corporation at the time of the alleged conduct and, (2) thereafter FPM was merged into PLIC. Kaser has also alleged that PLIC also employed Hughes during some relevant period of time.

Recognizing that Kaser's claims in the original Complaint against PLIC "are premised on the essential identity of the two corporations", on January 3, 2002, this Court held that PLIC cannot, as a matter of law, tortiously interfere with FPM's economic relationships, and that Kaser's claim (if any) was against FPM (January 3, 2002 Memorandum Opinion and Order, at 20, emphasis supplied):

> ...Mr. Kaser has alleged that FPM was a wholly-owned subsidiary of PLIC. *In Cooperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771-72 (1984) the Supreme Court held that a parent corporation was legally incapable of conspiring with its wholly owned subsidiary for purposes of the antitrust laws. This decision rested on the recognition that corporations that have a complete unity of interest, despite separate incorporation, are essentially the same entity and thus incapable of conspiring. *Id*. The same unit of interest test may be used to determine whether closely related companies are capable of interfering with each other's contracts. *See F.C. Cycles Int'l, Inc. v. Fila Sport, S.P.A.*, 184 F.R.D. 64, 80 (D. Md. 1988). Mr. Kaser has not suggested that PLIC's interests in any way diverged from those of its wholly owned subsidiary, FPM. Indeed, all his claims against PLIC are premised on the essential identity of the two corporations. <u>Therefore, PLIC cannot be considered</u>

<u>an outsider to the economic relations between FPM and Mr.
Kaser so as to have tortiously interfered with them.</u>

As to the claim against *FPM* for tortious interference with economic relations, the Court dismissed the claim for failure to plead the alleged misrepresentation by Hughes with requisite specificity, but allowed Kaser 30 days to file an amended complaint.

Even if Kaser was entitled to attempt to resurrect a tortious interference claim against *PLIC* in the Amended Complaint after the Court's January 3, 2002 Memorandum Opinion, *the Amended Complaint contains no new or different allegations about PLIC.*[2] Accordingly, the Court correctly dismissed Kaser's claim for tortious interference with economic relations against PLIC.

## CONCLUSION

WHEREFORE, for the reasons stated, FPM and PLIC respectfully request the Court to deny the Motion for Reconsideration.

---

[2] The only changes to the Amended Complaint are (1) to add an allegation that Hughes misrepresented facts to Chevy Chase Bank *before* he left the employ of FPM, and (2) to add breach of contract claims against FPM and PLIC.

10

Respectfully submitted,


_____/s/_____

Robert J. Mathias (Bar No. 00253)
Marta D. Harting (Bar No. 10126)

PIPER RUDNICK LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
(410) 580-3000

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of October, 2003, the foregoing

Memorandum was sent by electronic filing to:

> Roderick R. Barnes, Esquire
> Ferguson, Schetelich & Heffernan
> 100 South Charles Street
> Suite 1401
> Baltimore, Maryland  21201-2703
>
> Attorney for Richard M. Kaser

                              _____/s/_____
                              Marta D. Harting

12